UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW Y O R K

| | |
|---|---|
| Ryan Coon | ) |
| | ) |
|        Plaintiff, | ) |
| -v.- | )   8:20 -cv- 554 -(FJS/DJS) |
| | ) |
| Brian P. Wolofsky aka Bryan P. Wolofsky, | ) |
| Richard L. Tenace, and Swan Landing | ) |
| Associates, L.P., | ) |
| | ) |
|        Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff Ryan Coon (hereinafter "Plaintiff") by his attorney, V. Jonas Urba, Esq., dba Urba Law PLLC, complains of Defendants Brian P. Wolofsky aka Bryan P. Wolofsky (hereinafter "Wolofsky"), Richard L. Tenace (hereinafter "Tenace"), and Swan Landing Associates, L.P. (hereinafter "Swan Landing" or "Managers"), as follows:

### PRELIMINARY STATEMENT

The FLSA and/or New York's Labor Laws mandate that employers:

- Specify time of day and day of week when workweeks began

- Designate fixed regularly recurring 7 day "workweeks"

1

- Pay premium pay for overtime

- Provide annual notices with regular pay days and overtime rates of pay

- Furnish statements with every wage payment of overtime hours and rates

- Maintain signed written notice acknowledgements of each employee

- Furnish explanations in writing of how wages were computed

In this case, Defendants failed to comply with all of these requirements. Statutory liability triggers liquidated damages in such cases.

Plaintiff seeks to recover from Defendants the amount of his unpaid overtime, unpaid wages, compensatory and liquidated damages, prejudgment interest, and attorney's fees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law, Article 6, § 190 *et seq.*, § 195 *et seq.*, § 198 *et seq.*, and Article 19, § 650 *et seq.*.

## PARTIES

1. Plaintiff Ryan Coon is an individual who currently resides in Potsdam, N.Y.

2. Upon information and belief, Defendant Brian P. Wolofsky (hereinafter "Wolofsky") is the developer, manager, and general partner of Swan Landing Associates, L.P. Wolofsky resides in Rochester, New York. Upon information and belief, he exercises sufficient control over its operations to be considered Plaintiff's employer within the meaning of the FLSA and the Labor Law.

2

3. Upon information and belief, Defendant Richard L. Tenace (hereinafter "Tenace") is property manager of Swan Landing Associates, L.P. Tenace resides in Potsdam, New York.  Upon information and belief, he exercises sufficient control over its operations to be considered Plaintiff's employer within the meaning of the FLSA and the Labor Law.

4. Upon information and belief, Defendant Swan Landing Associates, L.P. is a domestic limited partnership duly organized and existing under the laws of New York, with a principal place of business at 301 Swan St., Potsdam, New York 13676 in the County of St. Lawrence, New York.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* and 28 U.S.C. § 1367 (a), in that the state and federal claims arise from a common nucleus of operative facts such that they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

6. The venue of this action is proper because Plaintiff performed labor and services in the Northern District of New York, *i.e.,* a substantial part of the events or omissions giving rise to the claims occurred within the Northern District of New York.

## STATEMENT OF FACTS

7. Defendants were, at all relevant times, and are, in an industry affecting commerce within the meaning of 29 U.S.C. § 203(b).  Upon information and belief, Defendants, in combination with persons performing related activities for a common business purpose, are an enterprise whose gross volume of sales made or business done is not less than $500,000, exclusive of sales taxes.

8. Upon information and belief, Wolofsky and Tenace authorized the pay policies at Swan Landing and/or controlled the terms and conditions of Plaintiff's work.

9. Defendants accordingly acted as joint employers with respect to Plaintiff.

10. Plaintiff is 33 years old, married with children, and worked as a maintenance technician repairing residential properties owned by Swan Landing.

## 2016

11. In or about June of 2016 Plaintiff signed a lease agreement with Swan Landing. On or prior to that date he paid a security deposit and first month's rent.

12. Plaintiff's monthly rent was $800 which he paid through October 2016.

13. In or prior to early November, Defendants requested that Plaintiff perform residential maintenance services on Swan Landing's property. In exchange, Defendants agreed to credit Plaintiff $800 rent each month. On a later date Defendants also agreed to credit Plaintiff's water fees of approximately $63/mo.

4

14. Plaintiff received no wage notices, statements or a W-2 for 2016.

**2017**

15. In or about June, in addition to crediting Plaintiff with rent and water fees, Defendants began to sporadically pay Plaintiff. Plaintiff's W-2 (see Exhibit #1) confirms that Defendants paid Plaintiff $7,075.01 in total on these dates:

$567.32 on June 30

$864.06 on September 18

$1,035.47 on September 29

$451.96 on October 10

$1512.52 on November 2

$1070.11 on December 4

$500 Christmas bonus on December 11

$1,073.57 on December 20.

16. In addition to these payments, the gross wages of Exhibit #1 are more than double $7,075.01 because gross earnings include the value of 8 months' rent plus water fee credits, waived for Plaintiff and reported as wages, tips, other comp.

17. Defendants failed to specify time of day and day of week when workweeks began (see Exhibit #2 and all other time sheets).

18. Defendants failed to designate fixed regularly recurring 7 day "workweeks" during all times.

19. Defendants failed to pay premium pay for overtime and to provide annual written notices with regular pay days, lodging allowances (i.e. rent credits) and overtime rates of pay and to maintain signed written acknowledgments from employees during all times..

20. Defendants failed to furnish statements with every wage payment of overtime hours and overtime rates of pay during all times.

21. Defendants failed to pay premium pay for overtime at all times.

22. Plaintiff received no annual wage notices with the exception of a 2017 W-2 form, lumping rent credits as part of other compensation along with sporadic wage payments to him.

## 2018

23. Plaintiff received his first actual wage statement from Defendants on May 1 (see Exhibit #3). That statement shows his hire date as March 28.

24. Plaintiff had actually worked for and been paid by Defendants in January, February and March of that year.

25. Defendants also gave Plaintiff rent credits totaling $2400 for those three months. Both Wolofsky's hand written notes at the top of an envelope (see Exhibit #7-b) and Exhibit #3 YTD gross confirm these rent credits.

26. According to Exhibit #3 Plaintiff worked 145.83 hours over 10 consecutive days. His average work hours per day would have been 14.583. At that rate, even if he only worked 5 of 10 days, he would have **73 hours for a "workweek".**

27. Over the course of 2018, Defendants paid Plaintiff $19,993.21 in total on the following dates:

$1128.98 on January 3

$631.65 on February 15

$753.31 on March 2

$1376.44 on March 16

$2057.80 on May 1

$2434.67 on July 5

$2429.80 on July 31

$2324.30 on August 31

$1794.95 on October 2

$2978.09 on November 5

$2083.22 on December 3.

28. Plaintiff repeatedly asked Wolofsky and Tenace for copies of how many hours he had worked and how his wages were computed. Wolofsky emailed Plaintiff that even on January 22, 2019 he did not know (see Exhibit #7-a).

29. Wolofsky check marked the top of Exhibit #7-b that Plaintiff had satisfied his rent obligations for "Jan until Mar" of 2018 (see Exhibit #7-b).

30. Exhibit #3 overstates YTD gross for the first three months of 2018 by approximately $2700 (i.e. the FMV of rent plus water credits).

31. Plaintiff paid Defendants $840 on March 19 for rent with debit card #9488.

32. Plaintiff paid Defendants $825 on July 31 for rent with check #1047.

33. Defendants deducted $2450 for rent from pay in 2018 (see Exhibit #4).

34. Plaintiff did not authorize rent deductions from his paychecks which began with $850 on August 31 (see Exhibits #5 & #8).

35. Plaintiff repeatedly asked for his time records and for explanations of why his hours were short and why he had not been paid overtime.

36. On September 27, 2018 Wolofsky emailed Plaintiff, reminding him that Wolofsky was not to be trusted with original time sheets, implying that Wolofsky had misplaced or lost them (see Exhibit #6).

37. Wolofsky emailed Plaintiff that he himself was trying to figure out how many months Plaintiff had paid rent for and that Wolofsky did not know whether Plaintiff owed him or he owed Plaintiff for "unpaid hours" (see Exhibit #7-a).

38. An email exchange between Plaintiff and Tenace confirm discussions regarding Labor Standards and pay practices (see Exhibit #7-c).

39. According to Exhibit #8 Plaintiff worked 196.0 hours during August.

40. Absent accurate time records with designated 7 day workweeks, 196 monthly hours over the course of a year would average **45 hours per "workweek"**.

41. According to Exhibit #9, it appears that Tenace signed a time sheet which confirmed that Plaintiff worked 191 hours during October. Absent accurate time records with designated 7 day workweeks, 191 monthly hours over the course of a year would average **44 hours per "workweek"**.

42. The above extrapolation is consistent with Plaintiff's October 23 time sheet (Exhibit #9) which reflects a total of **45.5 hours over that "workweek"**.

43. Plaintiff received no annual wage notices, his wage statements were not weekly nor compliant with labor laws, Defendants gave him rent and water credits thru March, which they lumped into Plaintiff's YTD gross compensation.

## <u>2019</u>

44. Defendants paid Plaintiff $20,952.43 in total on the following dates:

$1979.19 on January 4

$2135.53 on February 6

$1549.45 on March 5

$1166.84 on April 5

$888.40 on May 3

$742.93 on May 20

$506.71 on June 4

$745.52 on June 18

$815.96 on July 2

$1107.20 on July 17

$1787.39 on August 2

$1237.95 on August 20

$1123.34 on September 4

$769.59 on September 17

$383.89 on October 3

$1092.85 on October 21

$778.19 on November 1

$958.82 on November 19

$452.60 on December 4

$730.08 on December 17.

45. $20,952.43 after taxes equals approximately $24,000 in gross earnings.

46. Plaintiff's rent was $825 per month totaling $9,900 for 2019.

47. Defendants deducted $9,828.10 from Plaintiff's earnings during 2019 for rent (see Exhibit #15).

48. According to Exhibit #10 Plaintiff worked no fewer than 181 hours during January. Absent accurate time records with designated 7 day workweeks, 181

monthly hours over the course of a year would average about **42 hours per "workweek".**

49. Exhibit #11 confirms Plaintiff's signed authorization for bi-weekly automobile loan deductions beginning on April 5 of 2019.

50. In or about April, Defendants modified Plaintiff's wage statements. Those modifications created overlapping pay periods to add further confusion to work hours, pay periods, workweeks, and unpaid overtime.

51. Exhibits #12-a & #12-b follow:

Exhibit #12-a, for April 16 thru May 15 shows 77.10 hours paid on May 20.

Exhibit #12-b for May 2 through May 31 shows 63.35 hours paid on June 4.

52. Plaintiff continued to experience changes to the actual hours he worked and recorded through at least August 2019 (see Exhibit #13).

53. To further complicate matters, Defendants staggered December 17 through January 15's pay period over 2 years (see Exhibit #14).

54. The gross earnings reflected in Exhibit #14 were apparently earned during the first 2 weeks of January 2020. Per Exhibit #16, $4743.38 was Plaintiff's gross pay for January divided by $19.48 per hour, translates to 243.5 hours that month, which applied over 12 months, would produce a **56 hour "workweek".**

55. Plaintiff was not provided an uninterrupted meal break of at least 30 minutes during his initial years of employment with Defendants and seeks compensation.

## FIRST CLAIM FOR RELIEF
## OVERTIME VIOLATION:
## FAIR LABOR STANDARDS ACT

56. Plaintiff realleges and incorporates by reference all preceding paragraphs.

57. At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203.

58. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of 29 U.S.C. § 203.

59. Defendants failed to pay Plaintiff overtime compensation for each hour he worked in excess of forty hours in a workweek in violation of the FLSA, 29 U.S.C. § 207.

60. 29 CFR § 516.2 mandates that employers maintain and preserve payroll records which contain time of day and day of week on which the employee's workweek begins, fix a regularly recurring 7 day consecutive workweek, weekly straight-time earnings or wages due for hours worked during such workweek, total premium pay for overtime hours, total deductions from wages including the nature of the items, and the pay period covered for each payment.

61. Defendants' violations of the FLSA, as described herein, were intentional.

62. Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime wages, an additional equal amount as liquidated damages,

reasonable attorneys' fees, and the costs of the action, pursuant to 29 U.S.C. § 216(b), in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## OVERTIME: NEW YORK LABOR LAW

63. Plaintiff realleges and incorporates by reference all preceding paragraphs.

64. Defendants failed to pay Plaintiff overtime compensation at a rate of one and one-half times his regular rate of pay for each hour worked in excess of forty hours in a workweek as required under New York Labor Law §§ 650 *et seq*.

65. As a result of Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants amounts to be proven at trial for unpaid overtime wages, liquidated damages equal to one hundred percent of the total wages found to be due, reasonable attorneys' fees, and the costs of the action, pursuant to New York Labor Law § 663(1).

## THIRD CLAIM FOR RELIEF
## § 195 VIOLATIONS: NEW YORK LABOR LAW

66. Plaintiff realleges and incorporates by reference all preceding paragraphs.

67. Defendants failed to comply with statutory notice provisions to Plaintiff including but not limited to the failure to provide yearly pay notices of a regular pay day designated by the employer, notices prior to wage reductions including

deductions for rent and truck loan, and overtime rates of pay in violation of New York Labor Law § 195 *et seq*.

68. Defendants failed to comply with statutory notice provisions to Plaintiff including but not limited to the failure to furnish Plaintiff with a statement with every payment of wages listing the overtime rate of pay, the number of overtime hours worked, and explanations in writing of how such wages were computed in violation of New York Labor Law § 195 *et seq*.

69. As a result of Defendants' New York Labor Law violations, once Plaintiff shows that his employer failed to make complete and timely payment of all wages due, not provided with statements of overtime rates of pay, number of overtime hours worked, and furnishing explanations in writing, Plaintiff shall recover $100 per work week not to exceed $2500 plus Plaintiff may recover $50 per work week not to exceed $2500 for not being provided the yearly notices referenced in paragraph numbered 50 herein, from Defendants, jointly and severally, reasonable attorney's fees, and the costs of the action, pursuant to New York Labor Law § 198.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Court grant the following relief:

70. Award Plaintiff unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 663(1);

71. Award Plaintiff unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

72. Award Plaintiff the full amount of unpaid wages, as well as an additional equal amount as liquidated damages pursuant to New York Labor Law § 663(1);

73. Award Plaintiff prejudgment and post-judgment interest, pursuant to New York CPLR 5001 and 5004;

74. Award Plaintiff the costs of this action together with reasonable attorneys' fees and civil action damages pursuant to New York Labor §s 198 and 663(1) and 29 U.S.C. § 216(b); and

75. Grant such other relief as may be just and proper.

V. Jonas Urba, Esq. (#701740)

URBA LAW PLLC
520 White Plains Rd., Ste. 500
Tarrytown, NY 10591
(914) 366-7366
jonas@urbanylaw.com
no fax number